IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD HUSE and JEFF DUNCAN,

    Plaintiffs,

    v.

AUBURN HONDA, JAY COOPER, JIMMY RAY MULLINS, AMERICAN HONDA MOTOR CO., and DOES 1-30,

    Defendants.
_____/

CIV. S-04-0227 DFL/JFM

MEMORANDUM OF OPINION
       AND ORDER

    Plaintiffs Richard Huse and Jeff Duncan, former car salesmen at Auburn Honda, bring this action against defendants for sexual harassment and retaliation.[1]  Defendant American Honda Motor Company, Inc. ("American Honda") now moves for summary judgment. For the reasons that follow, American Honda's motion is GRANTED.

---

[1] On September 21, 2004, the court held that the arbitration agreement between defendants Auburn Honda, Jay Cooper, and Jimmy Ray Mullins and plaintiffs was enforceable.  (9/21/2004 Order at 16.)

1

I.

The underlying dispute in this case involves allegations of sexual harassment by Huse against defendant Jimmy Ray Mullins, a manager at Auburn Honda. Auburn Honda, a car dealership located in Auburn, California, hired Huse in March 2001. (9/21/2004 Order at 2.) Huse alleges that while working at Auburn Honda, he was the victim of sexual harassment by Mullins. (Id. at 3.) Huse further contends that no remedial action was taken by the dealership after he complained to another supervisor about this behavior. (Id.) In September 2002, Huse filed a complaint for sexual battery with the Placer County Sheriff's Department and took approved medical leave. (Id. at 4.) When he returned from leave in February 2003, defendant Jay Cooper, the president and owner of Auburn Honda, allegedly informed Huse that Auburn Honda was under no obligation to return him to his former sales position. (Id.) According to Huse, Cooper then offered him a janitor or file clerk position, which Huse refused, thereby ending his employment at Auburn Honda. (Id.)

Duncan claims that after Huse left Auburn Honda, he was called into Cooper's office with Mullins present. (Id.) Cooper questioned Duncan about whether Huse intended to sue the dealership. (Id.) Duncan alleges that he told Cooper that Mullins had been acting inappropriately for years. (Id.) Duncan later spoke with the Placer County Sheriff's Department. (Id.) He alleges that co-workers and management began treating him differently, allegedly in retaliation. (Id.) According to

1  Duncan, in March 2003, Cooper screamed obscenities at him and
2  accused him of working with Huse to sue the dealership.  (Id.)
3  Shortly thereafter, Duncan's doctor recommended that he not
4  return to work because of the severe mental and physical stress
5  associated with the Huse incident.  (Id. at 5.)  Duncan took his
6  doctor's advice.
7       Plaintiffs' claims against American Honda are based on their
8  contention that American Honda was their employer at the time of
9  the events described above.
10      American Honda and Auburn Honda are two distinct entities.
11 Auburn Honda is a local dealership owned and operated by
12 defendant Cooper; American Honda is a separate California
13 corporation and is the exclusive distributor of Honda vehicles
14 within the United States.  (SUF ¶¶ 1, 9.)  No member of American
15 Honda's board of directors serves on the Auburn Honda board of
16 directors.  (Geffon Decl. ¶ 24.)  There is no evidence that the
17 two companies are subsidiaries of one another or that they are
18 jointly owned.
19      However, the two companies were in contact during the time
20 period of plaintiffs' allegations.  For instance, it is not
21 disputed that American Honda and Auburn Honda entered into a
22 Dealer Sales and Service Agreement.  (Mot. at 3; SUF ¶ 12.)  An
23 American Honda representative, one Mr. Butts, also visited Auburn
24 Honda at least once a month during plaintiffs' employment,
25 although plaintiffs themselves seldom had contact with Butts,
26 other than to be introduced and to say hello on occasion.

(Yeager Decl. ¶ 3; Huse. Dep. at 102-06; Duncan Dep. at 183-84.)

American Honda also had a hand in certain aspects of Auburn Honda's operations. For example, American Honda provided training programs for salespeople. (SUF ¶ 22.) Plaintiffs allege that they were required to attend these training sessions. (Opp'n at 5; Duncan Decl. ¶ 5; Huse Decl. ¶ 8.) However, the evidence does not indicate which of the two companies required their attendance. In connection with these training programs, plaintiffs received monthly statements from American Honda, telling them which quizzes and training programs they had completed, and which were outstanding. (Huse Decl. ¶ 12.)

Plaintiffs also received monthly performance statements from American Honda. (Id.) These statements were compiled from customer surveys American Honda supplied to Auburn Honda and its other dealers. (SUF ¶¶ 14-15.) Each month, American Honda reviewed customer feedback and ranked salespeople in each of the dealerships relative to one another. (Geffon Decl. ¶¶ 14-15.) In connection with this performance rating, a cash award or "spiff" of anywhere from $50 to $1,500 was given to certain salespeople who met milestones set by American Honda. (Id. ¶ 23; Huse Decl. ¶ 18.) Plaintiffs received awards from American Honda on at least one or two occasions. (Huse Decl. Ex. 4; Duncan Decl. Ex. 1.) Plaintiffs received form 1099s, not W-2s, for tax purposes. (SUF ¶¶ 102-05.) According to American Honda, it was legally required to issue a Form 1099 when it paid non-employees for services performed. (Id. ¶ 105.)

4

1    In addition to cash awards, plaintiffs received various
2 certifications and letters of congratulations from American Honda
3 for completing training programs and quizzes.  (Opp'n at 7-8;
4 Huse Decl. ¶ 28.)  Huse emphasizes a letter he received from
5 David Heath, manager of product and sales information at American
6 Honda, which states, "[b]y passing on all of the product
7 knowledge certification quizzes you have demonstrated a desire to
8 become one of our top salespeople."  (Opp'n at 8.)
9    However, outside of issuing Form 1099s and training
10 certifications to plaintiffs, American Honda did little else to
11 track or keep records of Auburn Honda and its salespeople.  It
12 did not keep Auburn Honda's books, issue its paychecks, maintain
13 its payroll records, pay its federal and state employment taxes,
14 issue its W-2s, or pay its bills.  (SUF ¶ 29.)  American Honda
15 did not set the salary or commission structure for Auburn Honda
16 employees, nor did it control Auburn Honda's personnel files.
17 (Id. ¶ 34-35.)  Specifically, when American Honda checked its
18 computerized employee records, which date back to 1998, it found
19 no record of plaintiffs.  (Id. ¶ 35.)
20    Plaintiffs also concede that they were interviewed,
21 disciplined, hired, and fired by Auburn Honda personnel.  (Id. ¶¶
22 40-41, 49, 52, 67-69, 71-76, 109, 114.)  Defendant Cooper
23 confirms that only Auburn Honda, and not American Honda,
24 maintained personnel and payroll records, set salary and
25 commissions, and hired, fired, disciplined, and promoted Auburn
26 Honda employees.  (Cooper Decl. ¶¶ 13-16.)  Finally, plaintiffs

5

1  completed benefits paperwork, employment verification forms, and
2  insurance forms for Auburn Honda only.  (SUF ¶¶ 53-55.)
3     Nonetheless, Larry Gonzales, a former salesman at Auburn
4  Honda, states that defendants Cooper and Mullins informed him
5  that if his sales performance was judged low by American Honda,
6  he would be fired.  (Gonzales Decl. ¶ 4.)  Further, he asserts
7  that Butts confirmed that dealerships, especially President's
8  Award winning dealerships like Auburn Honda, were encouraged to
9  fire employees who did not meet or follow American Honda
10 standards.  (Id.)  In contrast, Cooper states that American Honda
11 had no control over, nor did it direct, Auburn Honda personnel
12 decisions.  (Cooper Decl. ¶¶ 18-19.)  Finally, Gonzales alleges
13 that he saw e-mails from Butts stating that if Auburn Honda
14 failed to perform to American Honda's standards, it would suffer
15 adverse consequences such as diminishment of its car allotments.
16 (Gonzales Decl. ¶ 10.)

                                II.

18    Plaintiffs make two claims against American Honda.[2]  The
19 first claim asserts a violation of California Labor Code §
20 1102.5, which prohibits retaliation by an employer against an
21 employee for disclosing information to a government or law
22 enforcement agency.  The second claim is for wrongful
23 termination.  Both claims require a finding that American Honda
24 employed Huse and Duncan.  Cal. Labor Code § 1102.5(b); Holmes v.

---

[2] In their opposition brief, plaintiffs concede their third claim against American Honda under California Government Code § 12653.  (Opp'n at 11.)

Gen. Dynamics Corp., 17 Cal.4th 1418, 1426, 22 Cal.Rptr.2d 172 (1993)(plaintiff must demonstrate an employer/employee relationship in order to show wrongful termination).

"Employer" is not defined in Cal. Lab. Code § 1102.5. Nor is there a definition unique to wrongful termination. American Honda suggests borrowing the definition of employer from Title VII and the California Fair Employment and Housing Act ("FEHA") case law. (Mot. at 11.) Plaintiffs do not take issue with this approach.

In cases defining employer under Title VII and FEHA, there is a presumption that separate corporate entities such as American Honda and Auburn Honda are not co-employers. This presumption may be overcome if: (1) the entities can be considered a "single employer" or "integrated enterprise,"[3] (2) the entities can be considered "joint employers,"[4] or (3) one

---

[3] When deciding whether entities are a single employer or an integrated enterprise, the following four factors are considered: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. Laird, 68 Cal.App.4th at 737. All four of these factors should be considered together, but centralized control of labor is often considered the most relevant of the factors. Id. at 738.

[4] Whether two companies are joint employers depends on the following factors: (1) the nature and degree of control over employees; (2) the day-to-day supervision of employees, including discipline; (3) the authority to hire and fire employees and set conditions of employment; (4) the power to set pay rates or payment methods; and (5) control of employee records, including payroll. Jones v. County of Los Angeles, 99 Cal.App.4th 1039, 1045-46, 121 Cal.Rptr.2d 621 (2002); Wynn, 234 F.Supp.2d at 1093.

entity is the agent of another entity.[5]  See Morgan v. Safeway Stores, Inc., 884 F.2d 1211, 1213 (9th Cir. 1989); Wynn v. Nat'l Broad. Co., Inc., 234 F.Supp.2d 1067, 1093 (C.D.Cal. 2002); Laird v. Capital Cities/ABC, Inc., 68 Calliope.4th 727, 737-41, 80 Cal.Rptr.2d 454 (1998).

The factors relevant to these various tests suggest the signal importance of day-to-day supervision of employees to the employer designation.  On the undisputed facts here, such day-to-day supervision was absent from American Honda's relationship to Huse and Duncan.  Nonetheless, plaintiffs argue that American Honda effectively acted as their employer because it exerted so much overall control over Auburn Honda.  (Opp'n at 12-13.)  They point to the following: (1) plaintiffs received certificates of achievement and letters from American Honda; (2) American Honda paid cash awards to plaintiffs; (3) American Honda, while not handling day-to-day matters, had ultimate control over how Auburn Honda operated; (4) Butts confirmed to Gonzales that American Honda encouraged dealerships to terminate underperforming employees; and (5) American Honda provided training programs to plaintiffs and required participation in those programs.  (Id. at 3, 5-8, 13-14, 19.)  For the reasons discussed below, however,

---

[5] As to agency, the Dealer Sales and Service Agreement between the two entities specifically states that their relationship is "independent" and does not create any kind of agency relationship.  (SUF ¶¶ 12-13.)  Unless the parties acted in a manner inconsistent with this agreement, Auburn Honda is not American Honda's agent.  See Laird, 68 Cal.App.4th at 741 (holding that where parent company did not control any of the employment actions of the subsidiary, the subsidiary did not function as the parent's agent).

1  these facts are not adequate to overcome the presumption.
2       The first three facts are off the point.  As to the
3  certificates of achievement and congratulatory letters,
4  plaintiffs' receipt and public display of American Honda
5  certificates and letters does not show that American Honda
6  employed plaintiffs or dictated the terms of their employment any
7  more than the display of an Oscar demonstrates that the Academy
8  of Motion Picture Arts and Sciences is the employer of all
9  actors.  Similarly, plaintiffs' receipt of cash awards from
10 American Honda is not sufficient to show an employment
11 relationship.  Incentive awards are not uncommon between parties
12 and entities who have an economic, but not an employment,
13 relationship.  Plaintiffs were compensated for their day-to-day
14 labor by Auburn Honda.  (SUF ¶¶ 29, 34-35.)  Cash awards were not
15 treated as employer/employee income by either plaintiffs or
16 American Honda.
17      Plaintiffs' evidence of American Honda's general control
18 over Auburn Honda also fails to establish an employment
19 relationship between plaintiffs and American Honda.  The
20 pertinent inquiry is whether American Honda exercised day-to-day
21 control over Auburn Honda's employment relations, not whether it
22 could influence Auburn Honda in other respects.  Therefore,
23 whether American Honda could limit the number of cars it
24 distributed to Auburn Honda or whether American Honda could
25 conduct quality inspections of the dealership and inquire into
26 customer satisfaction is irrelevant.  These types of activities

9

do not create an employment relationship.  See <u>Adcock v. Chrysler Corp.</u>, 166 F.3d 1290, 1293 (9th Cir. 1999) (dealership agreement and similar "control" of dealership by Chrysler did not create employment relationship between the dealership's owner and Chrysler); <u>Evans v. McDonald's Corp.</u>, 936 F.2d 1087, 1090 (10th Cir. 1991) (even where a franchisor provided training materials and conducted frequent inspections, it did not have control over franchisee's labor relations); <u>Alberter v. McDonald's Corp.</u>, 70 F.Supp.2d 1138, 1145 (D.Nev. 1999) (franchiser's ability to terminate the franchise agreement, without more, did not "establish the requisite degree of control to demonstrate that an agency relationship existed").

     Finally, plaintiffs' last two facts do not help plaintiff's position.  Butts's statement that American Honda encouraged Auburn Honda to terminate underperforming employees is not relevant.  There is no evidence that either of the plaintiffs were underperforming or that they were terminated for this reason.  In fact, Huse alleges that he was one of Auburn Honda's top performers.  (9/21/2004 Order at 3.)  In addition, whether or not American Honda might encourage a dealership to terminate underperforming salesmen as a general proposition is not evidence that American Honda actually ever directed Auburn Honda to terminate plaintiffs or any other particular salesman.

     Similarly, the allegation that American Honda required training as a condition of continued employment at Auburn Honda is not supported by the evidence provided.  In fact, Huse states

1  that he was informed by Auburn Honda -- not American Honda --
2  that he had to comply with the American Honda sales procedures.
3  (Huse Decl. ¶ 8.)  Plaintiffs allege that American Honda dictated
4  these requirements, but they provide no probative evidence to
5  support that contention.
6       Plaintiffs have failed to show that American Honda acted as
7  their employer; therefore, they cannot recover against American
8  Honda under § 1102.5(b)[6] or for wrongful termination in violation
9  of public policy.  American Honda's motion for summary judgment
10 on these claims is GRANTED.
11                                III.
12      For the reasons discussed above, defendant American Honda's
13 motion for summary judgment is GRANTED.
14
15      IT IS SO ORDERED.
16 Dated: _June 10, 2005

                                  _____
                                  DAVID F. LEVI
                                  United States District Judge

---

[6] Plaintiffs also have not submitted evidence showing that American Honda knew plaintiffs reported the alleged sexual harassment to law enforcement officials.

11